IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GABRIEL DRAGOS TOADER,               )
                                     )
              Plaintiff,             )        No. 09 C 6684
       v.                            )
                                     )        Judge Robert W. Gettleman
J.P. MORGAN CHASE BANK, N.A.         )
and BANK OF AMERICA,                 )
                                     )
              Defendants.            )

## MEMORANDUM OPINION AND ORDER

Plaintiff Gabriel Dragos Toader has filed a pro se[1] two-count first amended complaint

against defendants J.P. Morgan Chase Bank, N.A. ("Chase") and Bank of America ("BoA"),

alleging violations of the Right to Financial Privacy Act (the "RFPA"), 12 U.S.C. § 3401 et seq.

Defendants Chase and BoA have filed the instant motions for summary judgment on,

respectively, Counts One and Two.   Defendant BoA has also filed a motion to strike paragraph

42 of the affidavit of Matthew Siffermann ("SA Siffermann"),[2] which plaintiff submitted with

his opposition to BoA's summary judgment motion.   For the reasons discussed below,

defendants' summary judgment motions are granted.   The motion to strike is denied as moot.

---

[1]  Plaintiff subsequently filed a motion for appointment of counsel, which this court granted on December 10, 2009.

[2]   At the time he executed the affidavit, Matthew Siffermann was a Special Agent with the Bureau of Immigration and Customs Enforcement ("ICE") within the Department of Homeland Security.

**FACTS**

Unless otherwise stated, the following facts are undisputed by the parties. Additional pertinent undisputed facts relating specifically to either Chase or BoA are included below in the discussions of defendants' respective summary judgment motions.

On December 21, 2007, the United States filed a criminal complaint in the Northern District of Illinois, charging plaintiff with knowingly engaging or attempting to engage in a monetary transaction of criminally derived property of a value greater than $10,000, which was derived from a specified unlawful activity (wire fraud), in violation of 18 U.S.C. § 1957(a). United States v. Toader, 07 CR 862. The criminal complaint alleged that plaintiff and others tricked over 2,000 individuals in the United States and abroad into believing that they were purchasing items from eBay and other websites. Using Western Union, these individuals wired over $5 million to plaintiff and others.[3] In 2008, as part of the investigation into this scheme, a grand jury subpoenaed Chase and BoA for plaintiff's account information. Chase and BoA complied with that subpoena.

In the instant case, plaintiff alleges that Chase and BoA had also provided his account information—specifically, the number and names of the accounts, tax identification numbers, balances, deposits, and transfers— to the government before that grand jury subpoena, at some point after November 4, 2004, but before the criminal complaint was filed on December 21, 2007, in violation of 12 U.S.C. § 3403(a) of the RFPA.

---

[3] On February 20, 2009, plaintiff pleaded guilty and, on October 16, 2009, received a 96-month sentence. On May 5, 2011, plaintiff was re-sentenced to 72 months' imprisonment. He is currently incarcerated by the U.S. Bureau of Prisons.

**DISCUSSION**

## I.      Legal Standards

Summary judgment is appropriate when the moving party shows that no genuine issue of

material fact exists and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  The moving party bears the initial burden of asserting the absence of a genuine issue of

material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and must support that assertion

by citing to materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).  Once the movant has met that

burden, the nonmoving party can defeat summary judgment by "showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).

The court's role "is not to evaluate the weight of the evidence or to determine the truth of

the matter, but instead to determine whether there is a genuine issue of triable fact."  Doe v. R.R.

Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).  The court therefore draws all

reasonable inferences in the light most favorable to the nonmovant.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986); Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239,

1242 (7th Cir. 1992).

## II.     Defendant Chase's Motion for Summary Judgment on Count I

From September 2005 through May 2006, plaintiff opened several accounts with Chase.

On May 5, 2006, Chase's Wire Fraud Department notified its Fraud Prevention & Investigation

Department that there was a potential problem with plaintiff's accounts.  Chase reviewed

plaintiff's account activity from October 2005 to April 30, 2006, and saw that plaintiff had made

numerous large cash deposits to his accounts, and had made numerous wire transfers to Cyprus

and Romania, the majority of which were between $9,000 and $9,900.

On June 1, 2006, Chase took a number of steps in response to these discoveries. Chase

interviewed plaintiff, who stated that he ran a construction and remodeling company and that the

cash deposits represented cash down payments from his customers. Plaintiff also told Chase

about a resort/spa in Cyprus called "AFMA," and stated that he was considering buying a hotel

or club. Also on June 1, 2006, Chase initiated the account closure process for plaintiff's

accounts.

Finally, also on June 1, 2006, Chase notified law enforcement of these transactions, based

on its conclusion that they were sufficiently indicative of ongoing potentially criminal activity so

as to require notification.[4] At an unspecified time after June 1, 2006, but before December 21,

2007 (when SA Siffermann executed his affidavit and the criminal complaint against plaintiff

was filed), Chase received a follow-up phone call from law enforcement, which requested that

Chase provide information related to these transactions. Chase complied, providing copies of

plaintiff's deposit and wire transfer records.

Chase argues that summary judgment in its favor is appropriate because that second

disclosure was authorized—as was the first disclosure—under § 3403(c) of the RFPA, which

---

[4] The undisputed evidence indicates that Chase had a reasonable basis for its belief that plaintiff had potentially committed a crime. Chase need not have suspected that plaintiff had committed a specific offense to permissibly notify law enforcement; while "a banker might have a good eye for something crooked going on, . . . a lawyer in the prosecutor's office would have to give considerable research and thought to the question of what specific offense had taken place." Puerta v. United States, 121 F.3d 1338, 1345 (9th Cir. 1997) (holding that a bank's disclosure that it suspected its customer of violating laws, whether or not the disclosure was prompted by a government agency's request, was permissible under § 3403(c)).

permits a bank to disclose to law enforcement information[5] that "may be relevant to a possible

violation of any statute or regulation." 12 U.S.C. § 3403(c). Although Count I broadly alleges

that Chase violated the RFPA sometime between November 4, 2004, and December 21, 2007,

plaintiff now concedes that Chase's June 1, 2006, disclosure was permissible under § 3403(c).

Plaintiff maintains, however, that § 3403(c) did not authorize Chase to make its subsequent

disclosure, which he alleges violated a separate RFPA provision: § 3402.

Plaintiff is incorrect in his contention that § 3403(c) does not apply to Chase's

subsequent disclosure. Section 3403(c) protects banks that bring to the government's attention a

potential statutory or regulatory offense. The scope of that protection is not limited to a bank's

notification of suspicious activity to law enforcement. It extends to a bank's production of

information regarding that suspected violation, so long as the disclosed information does not

exceed the scope of the nature of the suspected illegal activity. Hu v. Park Nat'l Bank, No. 07 C

844, 2008 WL 4686159, at *3 (N.D. Ill. May 8, 2008) (§ 3403(c) applied when a defendant bank

notified law enforcement that it had information potentially relevant to a legal violation by

providing law enforcement with three counterfeit money orders plaintiff had deposited). Here,

the information disclosed was plaintiff's suspicious deposit and wire transfer records, which

clearly revealed the nature of the suspected illegal activity and were, therefore, covered by

§ 3403(c).

Further, § 3403(c) is not limited to preliminary, one-time notifications; it extends to a

bank's response to a government request, again so long as the information is relevant to the

_____

[5] The information that may be disclosed under § 3403(c) is limited to the customer's identity or account number and the nature of the suspected illegal activity.

suspected illegal activity.  There is no reason to distinguish between a bank that contacts law

enforcement and, along with its initial notification, produces all the information that § 3403(c)

authorizes it to disclose—which is clearly permitted, United States v. Lewis, 411 F.3d 838, 842

(7th Cir. 2005) (§ 3403(c) applied when a bank discloses information in response to a

government-initiated request)—and a bank that contacts law enforcement with a cursory

notification, then makes additional disclosures within § 3403(c)'s scope in response to law

enforcement's follow-up request, Sornberger v. First Midwest Bank, 278 F. Supp. 2d 935, 937

(C.D. Ill. 2002) (§ 3403(c) applied when a defendant bank made an initial notification of

suspected criminal activity, then provided additional documentation in response to the law

enforcement's follow-up request).[6]  Because § 3403(c) protects Chase's June 1, 2006,

notification, and because the information provided on that occasion, as well as in the intertwined

subsequent disclosure, concerned the nature of the suspected illegal activity, § 3403(c) also

protects Chase's later disclosure.  Thus, because plaintiff has failed to establish a disputed issue

of material fact on whether § 3403(c)'s exception did not protect the subsequent disclosure,

summary judgment is appropriate.

Moreover, Chase also correctly contends that its disclosures were permitted by the

blanket RFPA exception for records disclosed in connection with Suspicious Activity Reports

_____

[6]  Plaintiff contends that "[i]f a second disclosure was permissible under Section 3403(c) of the RFPA, it would render Section 3402 meaningless and banks would be allowed to provide an individual's financial information to law enforcement without boundaries or restrictions." Even if plaintiff was correct that Chase's second disclosure was separate and distinct from its initial notification, the court is not persuaded by this statutory interpretation argument, which finds no support in the RFPA's unambiguous plain language or in any case law cited by plaintiff or identified by the court.  Section 3403(c)'s statutory language does not limit the scope of the exception  to initial, one-time disclosures to the government.  Plaintiff has pointed to no case in which a court has so held.

("SARs"). 12 U.S.C. § 3413(d). Plaintiff attempts to discredit this argument by pointing out

that Chase produced plaintiff's withdrawal and deposit records, as well as a Business Signature

Card for TDG, during discovery. According to plaintiff, because Magistrate Judge Nolan ruled

(in the course of granting in part Chase's motion for a protective order) that Chase was not

required to produce a SAR or information that would disclose that a SAR had been prepared,

"one can conclude (meaning there is a genuine dispute of a material fact) that these documents

were not provided as part of a SAR, or else they would not have been discoverable . . . ."

Contrary to plaintiff's assertions, whether Chase produced certain documents in

discovery is irrelevant. As Magistrate Judge Nolan explained, federal law requires a bank to file

a SAR to report any suspicious transactions relevant to a possible violation of a law or

regulation, 31 U.S.C. § 5218(g)(1); 12 C.F.R. § 21.11, and prohibits the bank from disclosing a

SAR or any information that would disclose that a SAR has been prepared or filed, 12 C.F.R.

§ 21.11(k). Although the bank cannot waive this "unqualified discovery and evidentiary

privilege," Gregory v. Bank One Corp., 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002), it may

disclose "the underlying factual documents" that led the bank to file a SAR. As Magistrate

Judge Nolan found, "the better approach prohibits disclosure of the SAR while making clear that

the underlying transaction such as wire transfers, checks, deposits, etc. are disclosed as part of

the normal discovery process." Toader v. Chase, No. 09 C 6684, Dkt. 94 (N.D. Ill. Dec. 1, 2010)

(quoting Cotton v. Private Bank and Trust Co., 235 F. Supp. 2d 809, 814 (N.D. Ill. 2002)). Thus,

Chase's production of plaintiff's records does not indicate that Chase did not provide these to the

government as part of a SAR. Plaintiff has presented no other evidence or argument supporting

its claim that § 3413(d) does not apply to protect Chase's disclosures. Thus, plaintiff cannot establish a disputed issue of material fact as to whether Chase violated the RFPA.

Finally, Chase argues that summary judgment is also appropriate because a separate statutory framework, the Annunzio-Wylie Money Laundering Act of 1992, 31 U.S.C. § 5318(g), provides it immunity. The court agrees that Chase is entitled to safe harbor under 31 U.S.C. § 5318(g)(3)(A), which provides that:

> Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority . . . shall not be liable to any person under any law or regulation of the United States . . . for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.

Plaintiff claims that this provision does not apply because Chase's disclosure "was done at the request of the law enforcement agency" and was therefore involuntary. But, as Chase points out, "[t]he immunity applies whether the financial institution makes a required or volunteered report." Gregory, 200 F. Supp. 2d at 1002. The provision also applies when the disclosure is made "pursuant to any other authority." 31 U.S.C. § 5319(g)(3)(iii). Here, Chase was obligated to make these disclosures under 31 U.S.C. § 5318(g) and C.F.R. § 21.11. Thus, Chase is also entitled to safe harbor under § 5319(g)(3)(iii).

For the foregoing reasons, the court grants summary judgment for Chase on Count I.

## II. Defendant BoA's Motion for Summary Judgment on Count II

Plaintiff has proffered only one piece of "evidence" in support of its claim that BoA provided his financial records to the government in violation of the RFPA: a statement in the affidavit of SA Siffermann stating that "according to records provided to the government by Bank of America, [plaintiff] maintained a savings account and three checking accounts at Bank

of America during 2005."   As defendant correctly argues, because this statement lacks

assurances that it was based on the affiant's personal knowledge, it does not meet the standard

set forth in Fed. R. Civ. P. 56(c)(4) and cannot be considered by the court.

Fed. R. Civ. P. 56(c)(4) requires that "[a]n affidavit or declaration used to support or

oppose a motion must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated."

See Haywood v. Lucent Techs., Inc., 323 F.3d 524, 533 (7th Cir. 2003) (affirming district court's

grant of summary judgment when plaintiff's only evidence was inadmissible hearsay);

Adusumilli v. City of Chicago, 164 F.3d 353, 359 (7th Cir. 1998) (interpreting Fed. R. Civ. P.

56(e), the predecessor of 56(c)(4)).  "On a motion for summary judgment, a court must not

consider those parts of an affidavit that are insufficient" under this rule.  Adusumilli, 164 F.3d at

539.

Plaintiff contends that the affidavit is clear that the statement was based on the affiant's

personal knowledge because, in the second paragraph of his affidavit, SA Siffermann states that

its contents "are based on [his] personal knowledge . . . ."   This bare assertion, however, is

insufficient to meet the standards for admissibility in a summary judgment motion.  See Ward v.

First Federal Savings Bank, 173 F.3d 611, 618 (7th Cir. 1999); Drake v. 3M, 134 F.3d 878, 887

(7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the

general truth of a particular matter, rather it requires affidavits that cite specific concrete facts

establishing the existence of the truth of the matter asserted.") (quoting Hadley v. County of Du

Page, 715 F.2d 1238, 1243 (7th Cir. 1983), cert. denied, 465 U.S. 1006 (1984)); Al's Serv. Ctr.,

Inc. v. BP Prods. N. Am., No. 03 C 4508, 2009 WL 1543720, at *1 (N.D. Ill. June 1, 2009).

Moreover, plaintiff is incorrect as a factual matter; paragraph 2 of the affidavit does not, in fact, attest that all statements in the affidavit are based on SA Siffermann's personal knowledge. The full paragraph states, in relevant part, that:

> The following statements are based on my personal knowledge; conversations with other law enforcement officers; review of records maintained by various law enforcement authorities, including ICE and one of its predecessor Federal agencies, the Immigration and Naturalization Service (INS); and review of records maintained by various business and financial institutions, such as Western Union, and MoneyGram.

Thus, the affidavit does not specify that the particular statement that BoA provided records to the government was based on the affiant's personal knowledge. It could also have been based upon "conversations with other law enforcement officers" or "review of [law enforcement] records."

Plaintiff has therefore failed to establish that this statement complies with Fed. R. Civ. P. 56(c)(4)'s requirement that affidavits opposing summary judgment be based on the affiant's personal knowledge.[7]

Thus, because the court cannot consider this statement, and plaintiff has offered no other evidence in support of his claim against BoA, plaintiff has failed to create a triable issue of fact as to whether BoA violated the RFPA.[8] The court accordingly grants BoA's motion for

---

[7] On the same day it filed its reply memorandum in support of its motion for summary judgment, BoA filed a motion to strike paragraph 42 of SA Siffermann's affidavit. As plaintiff notes in responding to the motion to strike, this motion is entirely duplicative of the arguments advanced in BoA's reply memorandum in support of summary judgment. Because the court has addressed these arguments in resolving BoA's summary judgment motion, BoA's motion to strike is denied as moot.

[8] In support of its motion for summary judgment, BoA also argues that because the RFPA does not apply to financial information of limited liability companies, plaintiff's claim fails regarding the three BoA accounts he held in the name of TDG. The court need not reach

(continued...)

10

summary judgment on Count II.  <u>See, e.g.</u>, <u>Yaodi Hu v. Park Nat'l Bank</u>, 333 Fed. App'x 87, 90, 2009 WL 1247136, at *3 (7th Cir. 2009) (affirming summary judgment in favor of bank on RFPA claim when "bank met its burden at summary judgment by identifying the absence of any evidence to support . . . claim of an unlawful disclosure" and the plaintiff failed "to produce sufficient evidence from which a jury could find in his favor on the essential elements of his case").

## CONCLUSION

For the foregoing reasons, the court grants defendant Chase's motion for summary judgment on Count I, and grants defendant BoA's motion for summary judgment on Count II, thus terminating this action.  BoA's motion to strike is denied as moot.[9]


**ENTER:**     **August 23, 2011**

_____
  **Robert W. Gettleman**
  **United States District Judge**

---

[8](...continued)
this argument.

[9]  The court expresses its appreciation to Joseph James Perkoski of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., for his excellent representation of plaintiff pursuant to appointment by the court.